UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1718
_____

JOHN MORRIS ANDERSON,
                              Appellant

v.

JP MORGAN CHASE BANK

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civ. No. 2:22-cv-05084)
District Judge:  Honorable Mia R. Perez

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 11, 2024
Before:  JORDAN, PHIPPS, and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 13, 2024)
_____

OPINION[*]
_____

PER CURIAM

    John Morris Anderson accompanied his friend and neighbor Charles James to a

JPMorgan Chase Bank, N.A. branch location in South Philadelphia. Anderson had agreed

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

to help James open an account to deposit a $62,000 check, and James agreed to give Anderson $7,000 of that deposit in order to repay a debt. At the branch, the pair were told by a Chase associate that funds could not be transferred directly from James's new account to Anderson's Chase account and, further, that a check written against the new account could not be cashed for five business days. James then wrote a $7,000 check to Anderson, who did not wait five business days before depositing it into an account he held with PNC Bank. Two days later, Chase returned the $7,000 check as "unpaid," and PNC charged Anderson a $12 returned-check fee. Apparently, Chase, with knowledge of the debt-repayment agreement between Anderson and James, had frozen James's account out of concern that Anderson was a "scammer" trying to take advantage of James. Chase conveyed as much during a phone call with James, who disputed Chase's assessment.

Proceeding pro se, Anderson filed this federal action against Chase, raising four claims he described as "racial discrimination" (Anderson and James are both Black), "defamation," "disparagement," and "interference with an advantageous business relationship," respectively.[1] Anderson tied Chase's freezing of James's account to the following injuries: Anderson had to loan James an additional sum of money; Anderson's and James's friendship deteriorated; and James backed out of a contractual agreement to

---

[1] Before filing this action, Anderson sued Chase in state court; his thrice-amended complaint was dismissed with prejudice. See Anderson v. Chase Bank, Case No. 220500692 (C.C.P. Phila.). After filing this action, Anderson filed two more against Chase. See Anderson v. J.P. Morgan Chase Bank, DC ECF No. 2:24-cv-04193 (E.D. Pa.); Anderson v. J.P. Morgan Chase Bank, DC Civ. No. 2:24-cv-01425 (E.D. Pa.). All of this litigation is rooted in Anderson's and James's experience at the Chase branch.

assist with Anderson's business venture. For relief, Anderson demanded damages exceeding half of a billion dollars.

Chase moved to dismiss Anderson's complaint under Federal Rule of Civil Procedure 12(b)(6). The District Court granted Chase's motion, after carefully scrutinizing (and accepting as true) the allegations in Anderson's complaint in order to determine whether any of his claims had been adequately pleaded. Cf. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[2]

The District Court considered whether Anderson had stated a claim under the Pennsylvania Human Relations Act or under Title II of the Civil Rights Act of 1964, and ultimately determined that the complaint lacked allegations demonstrating (1) the required exhaustion of administrative remedies (for the state law claim), or (2) the denial of services by Chase to *Anderson* (rather than to James), or (3) a cognizable agency relationship between Anderson and James. In addition, the District Court considered and rejected the possibility that Chase's private communication to James about its suspicion he was being scammed was the cause of injury to Anderson and could otherwise support a plausible Pennsylvania law claim for defamation, commercial disparagement, or tortious interference with contractual relations. The District Court also considered whether Anderson was trying to raise a claim under 42 U.S.C. § 1981; it concluded that Anderson had failed to state such a claim because he failed to plausibly plead either an

---

[2] Implicit in the District Court's decision to grant Chase's Rule 12(b)(6) motion is a decision to deny, as moot, Anderson's motion for summary judgment and Chase's motion to strike Anderson's motion. The better practice would have been for the District Court to explicitly adjudicate those motions in the final order.

intent by Chase to racially discriminate against Anderson, or a causal connection between Chase's actions and James's alleged breach of his business contract with Anderson.

Anderson now appeals. We have jurisdiction under 28 U.S.C. § 1291. Our review is de novo. See Lorenz v. CSX Corp., 1 F.3d 1406, 1411 (3d Cir. 1993).

For substantially the reasons given in the District Court's opinion, we discern no error in its analysis of Anderson's complaint. We add only this: The District Court, insofar as it perceived in Anderson's complaint a potential civil rights claim, should have sua sponte granted Anderson leave to fix his claim with an amended pleading, or instead determined that amendment would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251-52 (3d Cir. 2007). Because amendment would have indeed been futile, the District Court's omission was harmless.[3]

The judgment of the District Court will be affirmed. Chase's motion for leave to file a supplemental appendix, inclusive of its request for judicial notice, is denied.

---

[3] Anderson's opening brief cites a ruling in James's separately filed (but factually similar) action against Chase. See James v. J.P. Morgan Chase Bank, DC Civ. No. 2:23-cv-1918, ECF No. 25 (E.D. Pa. Feb. 29, 2024). There, the District Court allowed James's claim for tortious interference to proceed to discovery. The ruling in James was available to Anderson before the underlying action was dismissed, yet Anderson did not bring it to the District Court's attention. We generally do not consider arguments made for the first time on appeal. Regardless, and insofar as our futility assessment is concerned, we are not persuaded that the James ruling provides a path for Anderson to plead a viable claim.